FILED - GR
November 15, 2018 12:30 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: NS    SCANNED BY /  11/20/18

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FRED HUSTON-DARNELL CHANDLER, )
)
                   Plaintiff, )   Civil Case 1:18-cv-1289
)    Paul L. Maloney
V. )    United States District Judge
)
STATE OF MICHIGAN; MICHIGAN DEPARTMENT )    Complaint under the
OF HEALTH and HUMAN SERVICES; CHILD )    Civil Rights Act
PROTECTIVE SERVICES OF MICHIGAN; )    42 U.S.C. Section 1983
Ms. PASCHAL; LACIE WIERENGO; TAMIKA )
DAVIS; Supervisors of Tamika Davis, )
)
                   Defendants. )
)

## A. Jurisdiction

Jurisdiction is invoked pursuant to 28 U.S.C. Sec. 1343(a)(3) and 42 U.S.C. Sec. 1983. Further jurisdiction is based upon State and Federal Constitutions.

## B. Parties

1. <u>Plaintiff</u>: This complaint alleges that the civil rights of the plaintiff Fred Chandler, who presently resides at 2337 Riordan in Muskegon Heights, Michigan 49444, were violated by the actions and omissions of the below named individual, the State of Michigan and two (2) Department of the State of Michigan. The actions and omissions of the defendants occurred on several dates and under color of law as stated below.

2. The <u>defendants</u> State of Michigan, Michigan Department of Health and Human Services and Child Protective Services are sued in their official capacity and is located in Lansing, Michigan.

    Defendant Lacie Wierengo resides in Muskegon County as a Child Welfare worker for Michigan Department of Health and Human Services. This defendant is sued in her official and individual capacity.

Ms. Paschal, Defendant, resides in Muskegon County as a Child Welfare worker for Michigan Department of Health and Human Services. This defendant is sued in her official and individual capacity.

Tamika Davis resides in Muskegon County as a Child Welfare worker for Michigan Department of Health and Human Services. This defendant is sued in her official and individual capacity.

The supervisors of Tamika Davis reside in Muskegon County as Child welfare workers for Michigan Department of Health and Human Services. They are sued in their official and individual capacities.

All defendants who are sued in both their official and personal capacities can be located at 2700 Baker Street in Muskegon Heights, Michigan, P.O. Box 4290.

**C. Causes of Action**

Count 1: The following civil rights have been violated:

> **Conspiracy**
> **Extortion**
> **unlawful coercion**
> **gender and/or sex discrimination**
> **intentional infliction of emotional distress**
> **abuse and negligence of official power**
> **freedom of association**
> **defamation of character**
> **due process and cruel & unusual punishment**

Count 2: The complaint alleges that the defendants' policies, guidelines, procedures, and practices are unconstitutional.

## ALLEGED FACTS

3. On or about July 01, 2018 the plaintiff was visited at his home by the defendant Paschal who requested from plaintiff the address of the plaintiff's child mother (Swanda Smith). When at first the plaintiff failed to provide that address, the defendant shortly thereafter returned to the plaintiff's home with local law enforcement members (2) of the Muskegon Heights Police Department who, supporting the statements of defendant Paschal; threatened to confine the plaintiff in jail for his failure to cooperate with the defendant.

4. On or about July 01, 2018, the State of Michigan - assisted by those defendants named herein - took into custody the plaintiff's minor child; (Indya Smith) the defendants did so without regard to existing official documentation that the plaintiff was available and is in fact the legal parent (father) of Indya Smith.

5. The removal and confinement of plaintiff's subject child came upon the subject defendants located the child at the home of the paternal or maternal grandfather, Harvey Sims Jr.

6. On or about July 11, 2018, the defendants released Indya to her father (plaintiff).

7. Incorporating paragraph 6, the defendants did not provide to plaintiff any information regarding rules of custody.

8. On or about July 25, 2018, the defendant Tamika Davis visited the plaintiff's home and stated to plaintiff that her supervisor wanted the plaintiff to know that he was eligible to file for custody for his child Indya. In response, plaintiff stated that he was already aware of the same and that was what he in fact planned to do.

9. Incorporating paragraph 8, approximately 20 minutes after the plaintiff conveyed to the defendant what he planned to do, he received a phone call from Swanda Smith who indicated to plaintiff the conversation he had with the defendant, and who cursed and shouted over the phone her displeasure as to plaintiff's plan.

10. On or about July 26, 2018, the defendant (Davis) came to plaintiff's home and stated to him and his ex-girlfriend that because she received an allegation that there was drug use in the home, both he and his ex-girlfriend had to submit to a drug screen. The ex-girlfriend and plaintiff complied.

11. On or about July 30, 2018, defendant informed the plaintiff that his ex-girlfriend tested positive for cocaine use.

12. On or about August 2, 2018, defendant Davis came to plaintiff's home and requested that he and his ex-girlfriend sign and agree to what the defendant called a "safety planned". As to this so-called plan, the plaintiff's ex-girlfriend signed while the plaintiff did not.

13. On or about August 03, 2018, defendant Davis stated to the plaintiff over the phone that her "supervisor" "told me to tell you (the plaintiff) that if you don't sign the safety plan, we're going to take Indya from you" (the plaintiff). In response, plaintiff on that day signed the questioned "safety plan".

14. On or about October 11, 2018, defendant Davis told plaintiff that he tested positive for cocaine.

15. On or about October 17, 2018, the plaintiff tested negative for any drug use, and again tested negative by the defendants.

4.

16. On November 05, 2018, Defendant Lacie Wierengo contacted plaintiff by phone and stated that she "needed to see Indya". The defendant, with defendant Davis, arrived shortly thereafter to plaintiff's home, took Indya from plaintiff's car.

17. In a petition dated 11/06/2018, defendant Wierengo requested and was granted a court order approving the removal of plaintiff's child Indya. The petition and order based the deprivation of the plaintiff's child in relevant part stating:

> "illegal substance use"
> "violation of a previously agreed upon DHHS safety plan"
> "inability to adequately maintain cleanliness of the child"
> violation of a "DHHS alternate caregiver policy"

18. In a document dated 11/13/18, defendant Davis continued her efforts to deprive plaintiff of his child by reference to his criminal history.

19. On or about September 28, 2018, as well as on dates before and after that date, the plaintiff has made complaints to the defendants either equal to or greater than those made against him by the defendants who failed to respond as they have done against the plaintiff.

20. On, before, and after the date of 10/9/18, plaintiff has brought to the attention of defendant Davis and other state officials the existence of crimes and other important matter relevant to the disposition of the child custody case against him which continue to go ignored.

21 Subsequent to the year 1985, plaintiff has used no illegal substances and there exists no official record of the plaintiff ever been accused or criminally charged with drug possession or use.

5.

22. Any state record of the plaintiff having ever used any controlled substance was shared in confidence through the allegation of the plaintiff himself.

23. As a matter of record, the defendants knew or should have known that the plaintiff paroled from prison on October 17, 2017 and discharged from parole on October 17, 2018.

24. Incorporating paragraphs 3,4, 7-10, 12 - 14, and 16 - 20, the plaintiff believes that the defendants threat, abuse, and negligence violate both the 8th Amendment against cruel & unusual punishment and the due process clause of the 14th Amendment.

25. Incorporating paragraphs 14-16 and 21 and 22, plaintiff believes that the acts of defendants Davis and Wierengo constitutes defamation of character under the 1st and 14th U.S. Amendments.

26 Incorporating paragraphs 4, 5, and 17, the plaintiff believes that the defendants' policies, practices, rules, and guidelines, constitutes an unlawful deprivation of freedom of association under the 1st Amendment to the Constitution.

27. Incorporating paragraphs 1, 10, 12-14, 16-18, 21 and 22, the plaintiff believes that the acts of defendants Paschal, Davis, and Wierengo, constitutes intentional infliction of emotional distress under the 14th Amendment to the U.S. Constitution.

28. Incorporating paragraph 20, plaintiff believes that the defendants' practices and customs indicate gender or sex bias – violating the 14th Amendment. The plaintiff makes this assertion, in part, relevant to the case involving his fifteen year old son.

29. Incorporating paragraphs 12 - 14, plaintiff believes that the acts of defendant Davis and her supervisors constitute an unlaw act extortion or coercion - violating the due process clause of the 14th Amendment.

30. Incorporating paragraphs 8-10, 12-15, plaintiff believes that the acts of defendant Davis and her supervisors involves an unlawful conspiracy to wrongfully deprive plaintiff of his child - violating the 14th Amendment to the U.S. Constitution.

31. Incorporating paragraphs 10-17, the defendants' drug-screening policy, practices, and procedures appear to be inadequate, violating the public trust and 14th Amendment to the U.S. Constitution.

32 The plaintiff believes that the defendants' policies, procedures relevant to this action are inadequate, which also violate the public trust and the U.S. Constitution.

33. At a court hearing dated November 06, 2018, the Family Court of Muskegon did find that defendants' exercise of investigating an allegation of substance use was a violation of policy.

34. Incorporating paragraph 33, plaintiff asserts that all additional allegations pertaining to the deprivation of his child are either false, exaggerated, frivolous or untrue.

35. Plaintiff states that no previous lawsuit have been filed in state or federal court dealing with the same or similar facts involved in this case. **Furthermore**, no administrative relief have been sought in this matter because no adequate remedy is available and the issues involve the constitutionality of state policy and procedures.

## D. RELIEF REQUESTED

Plaintiff requests that this Court grant the following relief:

1. An **injunction** preventing defendants :

   from continuing to deprive the plaintiff of his child Indya;

2. A **declaratory ruling** that the state law, policy and procedures used to deprive plaintiff of his child be deemed unconstitutional;

3. **Award** to the plaintiff:

   Compensatory damages in the sum of $1,000.000.
   Punitive damages in the sum of $1,000.000.

## E. DEMAND for Jury Trial

Plaintiff demands a jury trial

Dated 11/15/18

Submitted by:

Mr. Fred Chandler
Plaintiff In Pro Per
2337 Riordan Street
Muskegon Heights, MI.
49444

fdc/file

8.